■ In the Matter of RICHARD T. THOMPSON, Petitioner, v RICHARD W. LENT et al., Respondents.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Board of Police Commissioners of the Town of New Paltz. The petitioner was discharged as a police officer after the board of police commissioners (hereinafter Board) found him guilty of a number of charges. These charges arose from an incident that began in a Village of New Paltz bar on the night of March 26, 1975. The petitioner and another village police officer were being harassed in the bar by one Edward Van Horn. The police officers were off-duty but were armed with their service revolvers. Van Horn was armed with a knife. When Van Horn left the bar, he was followed by the officers who claimed they intended to arrest him for harassment. A chase ensued which ended in the stabbing of the petitioner and the shooting death of Van Horn. The first issue raised

is whether the consolidated Board of Police Commissioners of the Village and Town of New Paltz had jurisdiction to discipline the petitioner. The contention is that the contract between the local governments, which became effective after the incident in issue and prior to the hearing under review, should not give the Board retroactive powers and, in any event, that the petitioner cannot be removed from a position for misconduct prior to his coming under contract to the joint department. Pursuant to the General Municipal Law, towns and villages located wholly therein may form joint police departments (§ 121-a); may enter into agreements for the performance among themselves of their respective functions (§ 119-o, subd 1) and may agree to joint efforts concerning the employment and discharge of personnel (§ 119-o, subd 2, par [b]). We conclude that the contract of April 1, 1974 between the Village and Town of New Paltz gives the new Board the authority to hear and decide a disciplinary case based on occurrences prior to the formation of the Board. A contrary conclusion would compel the result that all disciplinary actions in progress be halted on April 1 and no such actions concerning alleged misconduct occurring before that date be instituted (cf. *Matter of Hayes,* 43 AD2d 872, app dsmd 35 NY2d 755, mot for lv to app den 36 NY2d 641; *Matter of Abare v Hatch,* 21 AD2d 84). The petitioner next claims that the findings of the Board are not supported by substantial evidence. To determine that the instant decision was based on substantial evidence, this court need not review the evidence generally but must only find that the decision of the Board was rationally based on the evidence presented to it *(Matter of Pell v Board of Educ.,* 34 NY2d 222). As the instant case deals with internal administrative discipline, a somewhat broader range of discretion must be accorded the Board *(Matter of Ahsaf v Nyquist,* 37 NY2d 182; see *Matter of Marsh v Hanley,* 50 AD2d 687). With the above standard in mind it is necessary to examine the findings of the Board to determine whether they are supported by substantial evidence. The Board found that the petitioner "unnecessarily provoked" the incident in the bar. The respondent admits that the deceased (Van Horn) was provoking the petitioner. While it is not questioned that the deceased had a knife, it would not appear that he made any threatening gestures therewith while he was in the bar. There is hearsay evidence that the petitioner asked the deceased to go outside for a fight, but it does not otherwise appear that the petitioner made any hostile motions or provoked the situation in any manner. There is no substantial evidence that the petitioner provoked the unfortunate situation on the night in question. The Board found that petitioner "drew his revolver without just cause" and this finding is used to support a determination of guilt on charges IV and VIII. Charge IV is based on a violation of a rule prohibiting the unlawful or unnecessary use or display of a weapon and charge VIII is based on a rule that a firearm should not be drawn unless "in the judgment of the officer * * * readiness to fire is essential to the protection of life." It does not appear that the display of the weapon was unlawful and the expert testimony concerning the necessity of the display is far from unequivocal. The petitioner felt that it was necessary at least for his own protection, and the subsequent events support this conclusion. While the Board might find the petitioner's judgment displayed incompetency, there is no substantial evidence to support a finding of guilt on charges IV and VIII. The Board found (charge X) that petitioner failed to properly perform a duty in that he failed to properly identify himself as a police officer while in pursuit of the deceased and while threatening the use of deadly force against the deceased. The Board also found that the petitioner made a false written report (charge XI) by stating in such report

that he had identified himself and displayed his badge to the deceased. There is conflicting evidence on the question of whether petitioner identified himself as a police officer but it cannot be said there was not substantial evidence to support the Board's finding that he did not. And, given the specific circumstances and the broad range of the Board's discretion concerning matters within their own "special proficiency and experience" *(Matter of Ahsaf v Nyquist, supra,* p 184), it would not be irrational for the Board to conclude that the petitioner failed to perform a duty. Accordingly, the finding of guilt as to charges X and XI is sustained. Charges VI and VII deal with petitioner's use of his weapon and allege that he violated a rule that firearms should only be discharged "in self defense [and] shall be fired only when their use is permitted by section 35.30 of the Penal Law." It is also charged that he used his weapon for purposes beyond those permitted by section 35.30 which allows a peace officer to use deadly force "regardless of the particular offense which is the subject of the arrest * * * to defend the peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force." In the instant case it is not disputed that the deceased stabbed the petitioner in the stomach and either immediately thereafter or contemporaneously therewith, the petitioner fired the fatal shot. The facts would justify a belief of the petitioner that lives were in danger. It would appear that the petitioner did not exceed the Penal Law or the departmental regulations in firing his weapon. There is no substantial evidence to support a finding of guilt on charges VI and VII, and these findings must be reversed. Charges II and V allege incompetency or inefficiency in the performance of his duty, failure to protect life and property and engaging in conduct which brought discredit upon the department. Petitioner failed to summon assistance from the department and requested assistance of a private, unarmed civilian. These actions constitute substantial evidence to sustain the Board's findings as to those two charges. Additionally, since petitioner did violate a number of departmental regulations, the Board could rationally conclude that he had engaged in conduct which brought discredit upon the department. Charge IX should, therefore, be sustained. The petitioner next claims that the penalty of discharge was excessive. A penalty should be set aside by this court only "if the measure of punishment or discipline imposed is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" *(Matter of Pell v Board of Educ., supra,* p 233, citing *Matter of Stolz v Board of Regents of Univ. of State of N. Y.,* 4 AD2d 361). In the instant case the Board has the authority to dismiss a police officer for any violation of the rules, and the regulations specifically provide that separation is justified for incompetency. It would not be shocking for the Board to dismiss a police officer when the substantial evidence supports a charge of incompetence. This is especially true when one considers the possible result of employing an incompetent officer to protect the lives and property of citizens. The punishment of discharge as determined by the Board is rational and is not an abuse of discretion, notwithstanding the fact that some of the charges on which the discipline was founded must be annulled. It does appear, however, that the penalty imposed must be remanded for reconsideration. While the Board does not specifically refer to the petitioner's employment record with the department in its decision, the record on review indicates that this employment record was considered by the Board in reaching its conclusion although it was never entered into evidence and forms no part of the record on this proceeding. The testimony did reveal that the petitioner had been previ-

ously disciplined, but it did not indicate the seriousness of the infraction or the severity of the punishment. The chairman of the Board admitted in his notice to the petitioner that the Board considered certain matters which had not been entered into evidence. While an administrative hearing need not comply with strict evidentiary standards, it is clearly improper "for an administrative agency to base a decision of an adjudicatory nature, where there is a right to a hearing, upon evidence or information outside the record [citations omitted]" *(Matter of Simpson v Wolansky,* 38 NY2d 391, 396). Although the penalty imposed is not arbitrary and capricious, it is based on evidence not contained in the official record and the penalty should, therefore, be reversed and remitted. Determination modified by annulling the finding of guilt on charges IV, VI, VII and VIII, and by annulling the penalty imposed and remitting the matter for a reconsideration of penalty, and, as so modified, confirmed, without costs. Koreman, P. J., Greenblott, Kane, Larkin and Reynolds, JJ., concur.